CERES FERTILIZER, INC., A COLORADO CORPORATION, APPELLEE, V. FRED O. BEEKMAN, APPELLANT.

290 N. W. 2d 199

Filed March 18, 1980. No. 42774.

James G. Sharp of Everson, Noble, Wullschleger, Sutter & Sharp, for appellant.

Joseph M. Caffall, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Defendant appeals from a judgment in the amount of $48,415.60 on a promissory note executed and delivered by him to the plaintiff, and from an order overruling defendant's motion to quash an order of attachment obtained by the plaintiff. The only errors assigned by the defendant pertinent to a decision in this matter are that prior to judgment, the

plaintiff, a nonresident corporation, had its authority to do business in the state revoked and therefore could not maintain the action upon which judgment was entered and that the Nebraska statutes, sections 25-1001 et seq., R. R. S. 1943, under which authority certain of defendant's property was seized by writ of attachment and held pending judgment, are violative of due process as set forth in the Fifth and Fourteenth Amendments to the Constitution of the United States of America. We affirm in part, and in part reverse the judgment of the District Court.

Plaintiff filed its petition on January 10, 1977, and defendant, his answer in the nature of a general denial on March 21, 1977. On February 23, 1977, plaintiff filed an affidavit for an order of attachment, alleging the commencement of the action, the nature and amount of its claim, and that the same was just, and that defendant was about to "assign, remove, or dispose of his property * * * with the intent to defraud his creditors" and that he "fraudulently contracted the debt * * * for which suit * * * has been brought." The affidavit having complied with the provisions of section 25-1002, R. R. S. 1943, the clerk issued an order of attachment to the sheriff of Chase County, reciting that plaintiff had filed the "necessary affidavit and undertaking" and directing the sheriff to attach "lands, tenements, goods, chattels, stocks, or interest in stocks, rights, credits, moneys, and effects of Fred O. Beekman, Defendant, in Chase County * * *."

In compliance with that order, the sheriff attempted to attach defendant's corn in possession of Chase County Grain, Inc., and Imperial Grain Elevator. However, he was informed that the same had been sold, but that each grain elevator was holding $26,000 in proceeds from its sale. Additionally, the sheriff learned or had knowledge of competing claims or liens, including levies made by him upon executions issued by the clerk of the District Court

for Chase County. He therefore proceeded under the provisions of section 25-1521, R. R. S. 1943, to notify the court of the competing claims.

Following such notification, the District Court for Chase County proceeded to hold a hearing to determine the priorities of the various claims. At the hearing, evidence was presented as to the sale of corn, as set forth above, and of the nature of the various writs and liens in existence. The court found that the property was "money in the hands of" third parties and "was not subject to levy by the Sheriff without attachment or garnishment * * *" and that the plaintiff, Ceres Fertilizer, Inc., had priority over the claims of all other claimants. Accordingly, the court directed the grain companies to pay the proceeds from the sales of corn into court and directed the clerk to "pay and distribute said money to Ceres Fertilizer, Inc., and the District Court of Gage County, Nebraska, pursuant to the Attachment issued by that Court * * *."

On February 22, 1978, almost a year to the day from the issuance of the order of attachment, defendant filed a motion in the District Court for Gage County to quash the same. Hearing was had on that motion on March 31, 1978. The plaintiff offered in evidence a security agreement and financing statement executed by defendant on November 18, 1976, and filed in Chase County on November 23, 1976, securing the note which is the subject of this lawsuit. This instrument designated as security 110,000 bushels of corn belonging to defendant, 60,000 bushels of which were alleged to be stored at the Chase County Grain Company. Also received in evidence were copies of the competing executions totalling approximately $6,000.

Further hearing was held on October 10, 1978, at which time the bill of exceptions from the hearing conducted in the District Court for Chase County, previously referred to, was received in evidence.

On November 13, 1978, the District Court for Gage County overruled the defendant's motion to quash.

Trial was held on the principal issue on April 2, 1979. The plaintiff established a prima facie case and the only thing by way of defense offered by the defendant was a certificate issued by the Nebraska Secretary of State reciting the "dissolution" for non-payment of taxes of the defendant Colorado corporation as of August 2, 1977. Judgment was entered for the plaintiff.

Taking up first the correctness of the trial court's judgment on the promissory note, there is no merit to the defendant's appeal in this regard. His reliance upon Rigid Component Systems v. Nebraska Component Systems, Inc., 202 Neb. 658, 276 N. W. 2d 659 (1979) is unavailing. That case stands for the proposition that a foreign corporation doing business within the state without a certificate of authority may not maintain an action in any court until such certificate has been procured, as provided by section 21-20,121, R. R. S. 1943. In the case at bar, plaintiff held a valid certificate of authority at all times during the period that it did business within the state and at the time of the commencement of this action. The only activity that it carried on since the cancellation of its authority to transact business was the continued maintenance of this action. Maintaining any action or suit does not, in itself, constitute transacting business in this state so as to require the securing of a certificate of authority. § 21-20,105, R. R. S. 1943. The trial court was correct in entering the money judgment that it did.

Defendant's constitutional attack is based primarily on the opinion in the case of Aaron Ferer & Sons Co. v. Berman, 431 F. Supp. 847 (D. Neb., 1977). In that case, attachment was utilized to acquire quasi in rem jurisdiction over the property of a nonresident defendant. The narrow holding of the court was that the statute in question, sections 25-1001 et

seq., R. R. S. 1943, employed "for acquiring *quasi in rem* jurisdiction" did violate the due process clause of the Fourteenth Amendment to the United States Constitution.

In arriving at its decision, the U. S. District Court relied heavily upon Fuentes v. Shevin, 407 U. S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); Mitchell v. W. T. Grant Co., 416 U. S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974); and North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U. S. 601, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975). Based upon its reading of those cases, the U. S. District Court identified five conditions that, in its view, must be met in order for a writ of attachment pendente lite to be constitutional: (1) The writ must be based upon an affidavit of facts prepared by the creditor or an attorney with personal knowledge of the facts; (2) there must be actual judicial participation in the issuance of the writ; (3) the creditor must indemnify the debtor against damages resulting from a wrongful taking; (4) the debtor must be able to dissolve the writ by posting a bond; and (5) there must be an immediate postseizure hearing at which the creditor is required to prove the allegations upon which the writ was issued. However, a close reading of the underlying U. S. Supreme Court decisions suggests that an attachment may be constitutional even if it does not meet all five of those conditions. In particular, lack of judicial participation in the issuance of the writ may be remedied by the provision of a prompt judicial hearing following the attachment.

The common thread running through all the U. S. Supreme Court cases is an amalgamation of the Ferer decision's items (1), (2), and (5), i.e., the concept that a debtor must be entitled to a timely judicial determination that the existing facts establish the creditor's right to attachment.

In Fuentes v. Shevin, *supra*, the majority opinion

stated: "We do not question the power of a State to seize goods before a final judgment in order to protect the security interests of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing."

The majority opinion in Mitchell v. W. T. Grant Co., *supra*, upheld a Louisiana statute which permitted attachment without notice or hearing, but did permit the debtor to move for dissolution upon which a hearing would be granted, much like our own section 25-1040, R. R. S. 1943. In holding the Louisiana statute valid, the court did attach some importance to the requirement that an affidavit clearly reveal the grounds relied upon by alleging specific facts and that a judicial officer review that affidavit. Those requirements are not explicitly included in the Nebraska statutory scheme. However, the omission is not fatal, in view of the Mitchell court's statement that "The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' *Phillips v. Commissioner,* 283 U. S. 589, 596-597 (1931)."

Finally, in North Georgia Finishing, Inc. v. Di-Chem, Inc., *supra*, a Georgia garnishment statute was struck down because it permitted a clerk to cause total impoundment of property during litigation without a hearing or other participation by a judicial officer. Justice Powell, in a concurring opinion, said that procedural due process would have been satisfied by the "establishment before a neutral officer of a factual basis of the need to resort to the remedy" and a requirement that there be provided "an opportunity for a prompt postgarnishment judicial hearing in which the garnishor has the burden of showing probable cause to believe there is a need to continue the garnishment * * *."

Section 25-1040, R. R. S. 1943, which provides that

"The defendant may, at any time before judgment, upon reasonable notice to the plaintiff, move to discharge an attachment * * *," does provide the debtor with the opportunity for a prompt postgarnishment judicial hearing. Such a hearing was had in this instance.

Quite apart from constitutional considerations, two early Nebraska cases, although perhaps not precisely on point, certainly are expressive of sound reasoning as to the nature of the evidence and the burden of proof to be employed at such a hearing. In Geneva Nat. Bank v. Bailor, 48 Neb. 866, 67 N. W. 865 (1896), it was stated: "The defendant, in his motion and affidavit, expressly and specifically denied each averment of fraud contained in the original affidavit on which the attachment was obtained. The *burden*, therefore, *was upon the plaintiff to sustain some one of the grounds of attachment* by a preponderance of the evidence." (Emphasis supplied.) The decision in Seidentopf v. Annabil, 6 Neb. 524 (1877), reveals prescience on the part of that early court as to coming due process requirements. The court, in that case, said: "We think, however, that in this class of cases proper practice would require that something more than the mere repetition of the language of the code should be presented to the judge. He ought to be placed in a position to act intelligently in the exercise of the power and discretion conferred by the code. A court or judge, before allowing an attachment in an action for a debt not due, might properly require a statement of facts and circumstances, such as ordinarily evince and disclose an *intent*, purpose, or effect, in the disposition of property injurious to the rights of creditors, and not act upon what might probably be a mere belief or an inference hastily drawn."

Although our entire statutory procedure for prejudgment attachment is constitutionally suspect under the holding in Ferer & Sons v. Berman, *supra,* it is

not necessary for us to make that determination in deciding this case. We do hold that at a hearing on a defendant's motion to quash an attachment, the burden is upon the plaintiff to sustain by a preponderance of the evidence one or more of the grounds of attachment claimed. In this case, at no point in the various proceedings, up to and including the trial on the merits, does the record reflect any evidence supporting plaintiff's claim that the defendant was about to dispose of his property to defraud his creditors or that the defendant fraudulently contracted the debt. Therefore, the attachment was improperly issued, erroneously continued, and defendant's, motion to dissolve should have been sustained.

Nevertheless, personal jurisdiction having been obtained over the plaintiff, the invalid attachment does not affect the trial court's judgment on the principal issue, and the judgment in that regard is affirmed. However, as to its order overruling the motion to quash, that portion of the judgment is reversed and the cause is remanded to the District Court for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR FURTHER PROCEEDINGS.